STEPHEN J. SORENSEN, First Assistant United States Attorney (#3049)
STEWART C. WALZ, Assistant United States Attorney (#3374)
LESLIE J. HENDRICKSON, Special Assistant United States Attorney
185 South State Street, #400
Salt Lake City, Utah   84111
Telephone: (801) 524-5682
Facsimile:  (801) 524-6924
**Attorneys for the United States of America**

---

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | INDICTMENT |
| | | Vio. 15 U.S.C. § 77q(b) and 77x |
| Plaintiff, | : | (Undisclosed Compensation); 15 |
| | | U.S.C. § 78j(b), 17 C.F.R. § |
| vs. | : | 240.10b-5, and 15 U.S.C. § 78ff, |
| | | (Securities Fraud). |
| JEROME M. WENGER, | : | |
| | | **2:99CR 0260K** |
| Defendant. | : | |

---

The Grand Jury charges:

<u>COUNT I</u>

1.     JEROME M. WENGER is an individual who at times material to this Indictment resided near Baltimore, Maryland.

2.     The defendant WENGER, at times material to this Indictment, conducted business under the name, The Next SuperStock. The Next SuperStock was a business that was engaged in making investment recommendations to potential purchasers of low priced stocks.

1

3.     PanWorld Minerals International, Inc., (PanWorld) was a company whose stock was publicly traded at times material to this indictment. PanWorld was headquartered in Salt Lake City, Utah and engaged the services of The Next SuperStock and the defendant WENGER to promote the sale of PanWorld Stock.

4.     The defendant WENGER contracted with PanWorld to provide financial public relations, consulting and advisory services. In return for this work, PanWorld agreed to compensate the defendant WENGER by paying him 5,500,000 shares of PanWorld stock.

5.     On February 10, 1994, PanWorld caused 1,000,000 shares of PanWorld stock to be issued to WENGER. On March 29, 1994, PanWorld caused an additional 500,000 shares of PanWorld stock to be issued to WENGER. On April 15, 1994, PanWorld caused an additional 1,600,000 shares to be issued to WENGER.

6.     The defendant WENGER published information about PanWorld on various radio shows and through an article in defendant WENGER'S publication, "The Next SuperStock." WENGER mailed his publication, "The Next SuperStock" to investors. One of the radio shows which WENGER hosted occurred on June 18, 1994. On that show, David Hesterman, a consultant to PanWorld participated via telephone from Salt Lake City, Utah.

7.     At no time did the defendant WENGER disclose, either in two radio shows during which Pan World was discussed or in his publication, "The Next Super Stock," that he had received PanWorld stock as compensation from PanWorld for recommending the stock, nor did he disclose the amount of PanWorld stock he had received for the services he performed for that company. In some of his radio shows WENGER did disclose that he was a consultant to PanWorld. In "The Next SuperStock" publication, defendant WENGER did make the following disclosure:

2

Officers, directors, editors, writers, or employees of The Next SuperStock may from time to time purchase, sell, or have a position in securities of the company discussed in this report, and these positions may be increased or decreased in the future. In some cases, The Next SuperStock or its employees may have a consulting arrangement with some of the companies and may provide a host of services for a fee.

8.     From April 18, 1994 until August 3, 1994, the defendant WENGER, while recommending that investors purchase PanWorld stock, was engaged in selling the PanWorld stock which he had received from the company as compensation. The defendant WENGER also engaged in sales through the brokerage account of his wife, Rita Debbie Wenger of the PanWorld stock which he had received as compensation.

9.     On or about June 18, 1994 in the Central Division of the District of Utah and elsewhere,

JEROME M. WENGER,

by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, on a radio show,  did publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which though not purporting to offer a security for sale, described the security of PanWorld Minerals International, Inc.,  for a consideration, of 5,500,000 shares of PanWorld stock, received or to be received from the issuer, PanWorld, without fully disclosing his receipt, whether past or present, of such consideration and the amount thereof, all in violation of 15 U.S.C. § 77q(b) and 15 U.S.C. § 77x.

COUNT II

1.     The Grand Jury re-alleges the allegations of paragraphs 1. through 8. of Count I as though fully set forth herein.

3

2.      On or about July 20, 1994 in the Central Division of the District of Utah and

elsewhere,

JEROME M. WENGER,

by the use of any means or instruments of transportation or communication in interstate

commerce or by the use of the mails, in an issue of "The Next SuperStock," did publish, give

publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment

service, or communication which though not purporting to offer a security for sale, described the

security of PanWorld Minerals International, Inc.,  for a consideration, of 5,500,000 shares of

PanWorld stock, received or to be received from the issuer, PanWorld, without fully disclosing

his receipt, whether past or present, of such consideration and the amount thereof, all in violation

of 15 U.S.C. § 77q(b) and 15 U.S.C. § 77x.

COUNT III

1.      The Grand Jury re-alleges the allegations of paragraphs 1. through 8. of Count I as

though fully set forth herein.

2.      On or about July 20, 1994, in the Central Division of the District of Utah and

elsewhere,

JEROME M. WENGER

did willfully, directly and indirectly, by use of any means or instrumentality of interstate

commerce and of the mails, (1) employ a device, scheme, and artifice to defraud; (2) make untrue

statements of material facts and omit to state facts necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading; and (3) engage

in acts, practices, and courses of business which would operate and did operate as a fraud and

4

deceit upon any person in connection with the purchase and sale of a security, that is the common

stock of PanWorld Minerals International, Inc., in that the defendant, while recommending, in a

publication entitled, "The Next SuperStock," that the recipients of that publication purchase the

common stock of Pan World Minerals, Inc., without disclosing that for the period between April

18, 1994 and August 3, 1994,  the defendant had been selling and was going to continue to sell

shares of PanWorld stock, all in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and 15

U.S.C. § 78 ff.

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

APPROVED:

STEPHEN J. SORENSON
First Assistant United States Attorney

STEWART C. WALZ
Assistant United States Attorney

5